Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, modifies and affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as an executed Pre-Trial Agreement, as:
 STIPULATIONS
1. That all parties are properly before the Commission and the Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff-employee at all relevant times herein.
3. Key Risk Management Services, Inc. and Discovery Insurance Company were the workers compensation carriers on risk at all relevant times.
4. Plaintiffs average weekly wage was determined from the Form 22 Statement of Days Worked and Earnings of Injured Employee submitted at the hearing before the Deputy Commissioner.
5. The dates of the injuries by accident are 23 November 1997 and 3 January 1998. Key Risk Management Services admits that on 23 November 1997, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer, and Discovery Insurance Company admits that on 3 January 1998, plaintiff sustained a specific traumatic incident while in the course and scope of her employment with defendant-employer, but deny that there was a new injury on that date.
6. The issues to be determined were as follows:
a) Whether plaintiff is entitled to any workers compensation benefits?
b) If so, which carrier is responsible for the payment of the benefits due plaintiff?
***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a seventy-three year old female who was employed by defendant-employer for seventeen years as a nurses assistant. Plaintiff had worked all three shifts offered by defendant-employer.
2. Plaintiff had a pre-existing history of lower back pain prior to 23 November 1997, for which she began treatment with Jennifer L. Seddon, M.D., in September 1993. Dr. Seddon authorized plaintiff to remain out of work for ten or eleven days because of the back pain that she experienced in 1993.
3. On 23 November 1997, plaintiff was working as a nurses assistant and helping a co-worker lift a resident-patient who had fallen out of her chair. While lifting the patient, plaintiffs right foot slipped and she fell against a bedpost striking her right hip and right lower back.
4. Plaintiff was sent by Mitchell Suggs to see Lakshman Rao, M.D., on 24 November 1997, as a result of her complaints of lower back pain. Plaintiff reported to Dr. Rao that she hurt her back on 23 November 1997 at 3:30 a.m. when her foot slipped and she hit her back on a bedpost. Dr. Raos assessment was acute trauma to the lumbosacral spine and he released plaintiff to return to light duty work.
5. Dr. Seddon examined plaintiff on 26 November 1997. Plaintiff reported back pain after lifting a patient and falling against the edge of a bedpost hitting her right back. Plaintiff already had prescriptions for Motrin and Flexeril, so Dr. Seddon prescribed Vicodin. Dr. Seddons note continued plaintiff out of work indefinitely.
6. Plaintiff returned to work after approximately eight days and continued to work through December. During this period plaintiff continued to experience lower back pain in the middle of her lower back to the right of her spine.
7. On 3 January 1998, plaintiff was emptying a clothes hamper, as she reached down to get the last piece of clothing, she felt a catch in her back. Plaintiff was unable to continue working due to the pain. Plaintiff reported the incident to Grace Parrish and went home.
8. Plaintiff was examined at the Betsy Johnson Memorial Hospital on 3 January 1998. Plaintiff was examined again on 6 January 1998 and was diagnosed with a probable herniated disc in the right lumbar spine. A 7 January 1998 MRI indicated plaintiff had a herniated disc at L5-S1 encroaching on the right L5 nerve root.
9. On 8 January 1998, plaintiff was examined by Leonard D. Nelson, Jr., M.D., an orthopaedic surgeon. Plaintiff reported that her back had been hurting for approximately two months and it became progressively worse over the last week. She also reported that she had hurt her back again on 3 January 1998. However, plaintiff indicated that her back hurt like a toothache from the time that she had returned to work following her first injury of 23 November 1997.
10. Dr. Nelson diagnosed her condition as a herniated disc at L5-S1 and performed a right L5-S1 far lateral disc compression on 9 January 1998. Plaintiff responded very well to the surgery.
11. Based on patient history and his examination of plaintiff, Dr. Nelson opined that she had experienced sciatica and radicular type symptoms following the initial injury on 23 November 1997. Plaintiffs symptoms gradually worsened until the 3 January 1998 injury. The 3 January 1998 incident contributed to plaintiffs condition, but Dr. Nelson indicated that it was the 23 November 1997 incident that caused the herniation.
12. Dr. Nelson released plaintiff on 18 February 1998 to return to light duty desk or clerical work. On 9 April 1998, plaintiff reached maximum medical improvement and was assigned a five percent permanent partial disability rating. Plaintiff could perform light to medium work.
13. There was some disagreement between Dr. Seddon and Dr. Nelson as to when plaintiff could have returned to work, but Dr. Seddon indicated that she would defer to the opinion of Dr. Nelson. Dr. Nelson has increased his permanent partial disability rating from five percent to ten percent due to the level of pain plaintiff continues to experience as a direct result of her compensable injuries.
14. The greater weight of the evidence supports a conclusion that plaintiffs L5-S1 herniation was caused by the 23 November 1997 injury.
15. On 12 January 1999, defendant-employer offered plaintiff a position as a dietary aid. Dr. Nelson approved plaintiff to return to work in this position after reviewing the required job duties. Plaintiff was familiar with the duties of a dietary aid as she had worked in that department previously. Plaintiff refused to accept this job because she felt that she could not handle the duties. The proffered job was suitable to plaintiffs skills and physical ability and demonstrated her ability to earn wages competitively.
16. Plaintiffs average weekly wage at the time of her injuries was $190.89.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an L5-S1 herniation as a direct result of a specific traumatic incident of the work assigned arising out of and in the course of employment with defendant-employer on 23 November 1997. G.S.97-2(6).
2. Plaintiffs average weekly wage was $190.89 per week, yielding a compensation rate of $127.27 per week. G.S. 97-2(5).
3. Plaintiff is entitled to receive total disability benefits for the periods of time that she was taken out of work by her treating physicians as a result of the injuries she sustained on 23 November 1997. Plaintiff missed work eight days following the 23 November 1997 injury, and she missed work from 3 January 1998 through 12 January 1999. G.S. 97-29.
4. Plaintiff is entitled to payment for all medical expenses reasonably required to effect a cure, give relief, or lessen plaintiffs period of disability. G.S. 97-2(19), 97-25.
5. Plaintiff is entitled to compensation for thirty weeks in a lump sum payment of $3,818.10 for the ten percent permanent partial disability to her back as a direct result of the injuries she sustained. G.S. 97-31(23).
6. Plaintiff unjustifiably refused suitable employment offered by defendant-employer on 12 January 1999, and compensation is suspended during the period of refusal.
G.S. 97-32.
***********
Based on the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-Key Risk Management Services, Inc., shall pay plaintiff total disability benefits at the rate of $127.27 per week for eight days following 23 November 1997 and from 3 January 1998 through 12 January 1999.
2. Defendant-Key Risk Management Services, Inc., shall pay plaintiff compensation at the rate of $127.27 per week for thirty weeks for the ten percent permanent partial disability rating plaintiff received to her back as a result of her specific traumatic incident.
3. Defendant-Key Risk Management Services, Inc., shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury when bills for the same have been submitted to and approved by the Commission, for so long as such evaluations, treatments, and examinations may reasonably be required to effect a cure, give relief, or lessen plaintiffs period of disability.
4. A reasonable attorneys fee in the amount of twenty-five percent of compensation approved and awarded for plaintiff is approved for plaintiffs counsel. The attorneys fee shall be deducted from the compensation due plaintiff and shall be paid directly to plaintiffs counsel.
5. Defendant-Key Risk Management Services, Inc., shall pay the costs of this action.
***********
 ORDER
In the event of a further appeal by either party to the North Carolina Court of Appeals, the Commission, pursuant to G.S. 97-86.1(b), ORDERS defendant-Key Risk Management Services, Inc., to pay plaintiff total disability benefits and permanent partial disability benefits pursuant to Paragraphs 1 and 2 of the foregoing Award. If defendant-Key Risk Management Services, Inc., is not found ultimately liable for the amount paid to plaintiff, defendant-Key Risk Management Services, Inc., shall be reimbursed by the employer or carrier ultimately held liable.
 S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ LAURA K. MAVRETIC COMMISSIONER